931 F.2d 984
 Bankr. L. Rep. P 73,966
INTERSTATE COMMERCE COMMISSION, Plaintiff, Appellee,
v.
HOLMES TRANSPORTATION, INC., Defendant, Appellee.
Robert C. Holmes and Dorothy Holmes, Trustees of the Alvin
R. Holmes Fund, Robert C. Holmes, Individually,
and J. Robert Seder, Intervenors, Appellants.
 No. 90-1208.
 United States Court of Appeals,
First Circuit.
 Heard Aug. 2, 1990.
Decided May 6, 1991.
 
 John Woodward, with whom Seder and Chandler were on brief, for intervenors-appellants.
 Stuart B. Robbins, for plaintiff, appellee.
 Frank J. Weiner, for defendant, appellee.
 Before TORRUELLA and CYR, Circuit Judges, and BOWNES, Senior Circuit Judge.
 CYR, Circuit Judge.
 
 
 1
 This appeal challenges a civil contempt order and related orders entered by the district court against intervenors-appellants in a civil action brought against Holmes Transportation, Inc. ("HTI"), an ICC-certified motor-carrier, by the Interstate Commerce Commission ("ICC"). We remand for further proceedings.
 
 
 2
 * BACKGROUND
 
 
 3
 The ICC filed a complaint against HTI in the United States District Court for the District of Massachusetts for failing and refusing to process and refund alleged freight shipment overpayments totalling $501,976 in violation of 49 C.F.R. 1008.9. At the time the ICC action was brought, HTI was controlled by its only stockholders: Robert C. Holmes and the Alvin R. Holmes Fund ("Holmes Trust"), of which Robert C. Holmes and his wife, Dorothy Holmes, were trustees. J. Robert Seder, Esquire, a member of the Massachusetts Bar, was a director of HTI.
 
 
 4
 Shortly after ICC initiated the present action, HTI was sold to Manfred Ruhland and Route USA Resources, Inc. ("Route USA"), a corporation controlled by Ruhland. During presale negotiations, Ruhland suggested that the purchase price for HTI be reduced to reflect the amount of any refunds later required by HTI as a result of the pending ICC action ("HTI refunds"). Ultimately the parties agreed instead to establish a $500,000 escrow fund from which HTI refunds would be disbursed jointly by the designated escrow agents: Robert D. Gunderman, Esquire, representing Ruhland and Route USA; and Seder, who represented Robert C. Holmes and Holmes Trust.
 
 
 5
 Robert C. Holmes and Holmes Trust deposited the required monies with the escrow agents under an escrow agreement ("private escrow agreement") which provided that the escrow was to terminate on March 16, 1989, any monies remaining in escrow at termination to be disbursed to Robert C. Holmes and Holmes Trust.[1] The district court and the ICC were not informed of the private escrow agreement.[2]
 
 
 6
 ICC and HTI consented to a district court injunctive decree entered on December 12, 1988, requiring that HTI escrow $502,000 from which it would be required, not later than December 31, 1988, to disburse all HTI refunds as directed by the district court. HTI failed to comply with the injunctive decree.
 
 
 7
 On July 14, 1989, Ruhland and Route USA sold HTI to Anthony Matarazzo. At a meeting on September 14, 1989, Seder furnished the ICC with copies of the private escrow agreement, and Anthony Matarazzo, on behalf of HTI, agreed to effect the overdue HTI refunds within thirty days, provided Gunderman and Seder, the private escrow agents, would release the private escrow funds and reimburse HTI for its administrative costs. Gunderman agreed, but Seder refused.
 
 
 8
 On October 13, 1989, Robert C. Holmes, Holmes Trust, and J. Robert Seder, Esquire, as escrow agent, (hereinafter otherwise referred to as "intervenors") intervened as plaintiffs in the ICC action, demanding the monies remaining in the private escrow on March 16, 1989. ICC promptly petitioned the district court to hold HTI, Ruhland, Route USA, Matarazzo, Seder and Gunderman in civil contempt for failure to comply with the terms of the district court injunctive decree requiring disbursements to effect the HTI refunds.
 
 
 9
 Shortly before the civil contempt hearing on January 26, 1990, the district court was informed that HTI had filed a voluntary chapter 11 petition with the United States Bankruptcy Court for the District of New Jersey on December 15, 1989. The intervenors requested that the contempt proceedings be continued in accordance with the automatic stay allegedly activated by the HTI chapter 11 petition. The district court denied the continuance, on the strength of its ruling that the automatic stay under Bankruptcy Code Sec. 362, 11 U.S.C. Sec. 362(a), was not implicated because the private escrow funds were not "property" of HTI. But see Bankruptcy Code Sec. 362(a)(1), (2), (3), (6); 11 U.S.C. Sec. 362(a)(1), (2), (3), (6).
 
 
 10
 At the conclusion of the civil contempt hearing, the district court found that: (1) Seder had consented to the December 1988 injunctive decree as counsel to Robert C. Holmes and Holmes Trust;[3] (2) the terms of the injunctive decree controlled the terms of the private escrow agreement; and (3) HTI, Gunderman and Seder had violated the injunctive decree by failing to disburse the HTI refunds from the private escrow. HTI, Seder and Gunderman were found in civil contempt, but the court ruled that Gunderman had purged himself by agreeing to transfer the private escrow funds to effect the HTI refunds. Seder and Gunderman were replaced by a successor escrow agent appointed by the district court.[4]
 
 II
 DISCUSSION
 
 11
 The intervenors-appellants' principal contention on appeal is that the district court erroneously deemed intervenors bound by the injunctive decree as a consequence of its determination that Seder consented to the decree in behalf of Robert C. Holmes and Holmes Trust.[5] We do not address the merits of appellants' principal contention, as the district court did not consider whether the predicate proceedings, out of which arose the district court orders challenged on appeal, were automatically stayed, pursuant to Bankruptcy Code Sec. 362(a)(1) and (b)(4), immediately upon the commencement of the HTI chapter 11 proceedings on December 15, 1989, or whether the acts which resulted in the district court orders challenged on appeal were automatically stayed pursuant to Bankruptcy Code Sec. 362(a)(2), (3), (6) and (b)(5).[6]
 
 
 12
 Except as provided in Bankruptcy Code Sec. 362(b), section 362 stays both the commencement and the continuation of all actions and proceedings, including judicial proceedings, against the debtor, id. Sec. 362(a)(1), as well as the enforcement of a prepetition judgment against the debtor, id. Sec. 362(a)(2), "any act to obtain possession of property from the estate or to exercise control over property of the estate," id. Sec. 362(a)(3), and any act to collect or recover a prepetition claim against the debtor, id. Sec. 362(a)(6).
 
 
 13
 The automatic stay is designed to effect an immediate freeze of the status quo at the outset of the chapter 11 proceedings, by precluding and nullifying most postpetition actions and proceedings against the debtor in nonbankruptcy fora, judicial or nonjudicial, as well as most extrajudicial acts against the debtor, or affecting property in which the debtor, or the debtor's estate, has a legal, equitable or possessory interest. The automatic stay is activated immediately on the filing of a voluntary chapter 11 petition under Bankruptcy Code Sec. 301, and remains in effect either until the entry of an order under Bankruptcy Code Sec. 362(c)(2), granting or denying a discharge or closing or dismissing the chapter 11 case, or until the entry of an order granting relief from stay pursuant to Bankruptcy Code Sec. 362(d), (e), (f). Judicial actions and proceedings, as well as extrajudicial acts, in violation of the automatic stay, are generally void and without legal effect, In re Smith Corset Shops, Inc., 696 F.2d 971, 976 (1st Cir.1982); In re Smith, 876 F.2d 524, 526 (6th Cir.1989); In re 48th Street Steakhouse, Inc., 835 F.2d 427, 431 (2d Cir.1987), cert. denied, 485 U.S. 1035, 108 S.Ct. 1596, 99 L.Ed.2d 910 (1988); In re Advent Corp., 24 B.R. 612, 614 (B.A.P. 1st Cir.1982); In re Colon, 102 B.R. 421 (Bankr.E.D.Pa.1989), unless countenanced by the court in which the chapter 11 petition is pending, see generally 2 Collier on Bankruptcy p 362.11 (15th ed. 1987) ("actions taken in violation of the stay are void and without effect").
 
 
 14
 The district court did not consider, and the parties do not discuss on appeal, whether the commencement of the HTI chapter 11 proceedings on December 15, 1989, more than a month prior to the entry of the district court orders challenged on appeal, operated as an automatic stay of the ICC action against HTI in the district court, pursuant to Bankruptcy Code Sec. 362(a)(1) & (b)(4), or as a stay of the contempt proceedings by virtue of Bankruptcy Code Sec. 362(a)(2), (3) or (6).[7] As the record on appeal does not enable a determination of the predicate facts and we are without the benefit of any articulation of the parties' positions relating to the legal effect of the HTI chapter 11 proceedings upon these district court orders, we remand to permit the district court to determine in the first instance whether the ICC action against HTI, or any act by ICC relating to HTI or to the private escrow, was subject to the automatic stay under Bankruptcy Code Sec. 362(a)(1), (2), (3), (6) and (b)(4), (5).[8]
 
 
 15
 In the event it is determined that the ICC action against HTI in district court, or any act to obtain possession or control of the private escrow, was subject to the automatic stay, the district court shall set aside any order precluded by the automatic stay, without prejudice to the right of any party, and without limitation on the power of the district court sua sponte, to reinstitute the civil contempt proceedings following relief from, or expiration of, the automatic stay, in accordance with Bankruptcy Code Sec. 362(c)-(f). In the event that the district court, on remand, reaffirms its contempt order, or any related order, or directs other or further relief against HTI, Robert C. Holmes, Holmes Trust and/or J. Robert Seder, Esquire, it shall make special findings of fact and conclusions of law.[9] Appellate jurisdiction is retained pending remand.
 
 
 
 [1]
 Under the terms of the private escrow agreement, the HTI refunds, and related administrative disbursements, were to have been made prior to March 16, 1989
 
 
 [2]
 On September 5, 1989, well beyond the scheduled private escrow termination date, ICC received a copy of a complaint filed against HTI in a state court action instituted by Robert C. Holmes and Holmes Trust, asserting their entitlement to all private escrow monies
 
 
 [3]
 Although the injunctive decree entered on December 12, 1988, identified Seder as "attorney for defendant" (viz., HTI), and neither Robert C. Holmes nor Holmes Trust was a party to the ICC proceedings until late 1989, the district court deemed Seder's consent to the decree binding on Robert C. Holmes and Holmes Trust, on the ground that Seder could no longer have represented HTI after it was acquired by Ruhland and Route USA. The district court observed:
 throughout this period ..., Mr. Seder represented the selling shareholders [Robert C. Holmes and Holmes Trust] only. Consequently, he could sign the injunction only in that capacity. And he did sign as counsel for the selling shareholders and as their escrow agent, as they, under the terms of the sale of the stock as reflected in the escrow agreement, would have obligations to make payments to the shippers.
 While the record offers no other direct indication, the quoted language suggests that the district court may have relied on a theory of "implied authority," to support its determination that Seder was representing Robert C. Holmes and Holmes Trust. See also note 5, infra.
 
 
 [4]
 On February 2, 1990, plaintiffs-intervenors filed a Motion for Stay Pending Appeal, pursuant to Fed.R.Civ.P. 62, which was denied on February 22, 1990. The district court then directed HTI and the court-appointed escrow agent to disburse the HTI refunds from the private escrow not later than March 30, 1990. The intervenors filed a notice of appeal on February 27, 1990. On March 2, 1990, we stayed all disbursements from the private escrow pending further order. A disbursement of $20,934.16 was authorized by our order of March 23, 1990, to defray administrative costs previously incurred by HTI
 
 
 [5]
 The bases for their contention are: (1) Robert C. Holmes and Holmes Trust were not parties to the ICC/HTI action; (2) the injunctive decree plainly identifies Seder as "counsel for defendant" (viz., HTI), and (3) the record is devoid of evidence that Seder had either actual or apparent authority to consent to the district court injunctive decree in behalf of Robert C. Holmes or Holmes Trust. Robert C. Holmes and Holmes Trust contend that their entitlement to the funds they deposited in the private escrow could not be affected by a district court injunctive decree to which they were not parties. See also note 3, supra
 
 
 [6]
 The relevant language in Bankruptcy Code Sec. 362(a)(1), (2), (3), (6) and (b)(4), (5) reads as follows:
 Sec. 362. Automatic stay.
 (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, ... operates as a stay, applicable to all entities, of--
 (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
 (2) the enforcement, against the debtor ..., of a judgment obtained before the commencement of the case under this title;
 (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
 ....
 (6) any act to collect ... or recover a claim against the debtor that arose before the commencement of the case under this title;
 ....
 (b) The filing of a petition under section 301, 302, or 303 of this title, ... does not operate as a stay--
 ....
 (4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;
 (5) under subsection (a)(2) of this section, of the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power....
 11 U.S.C. Sec. 362(a)(1), (2), (3), (6) & (b)(4), (5) (emphasis added).
 
 
 [7]
 The record on appeal does not disclose, as at the date of the entry of these district court orders or subsequent thereto: (1) the status of the HTI chapter 11 proceedings; (2) whether relief from stay was requested, granted or denied; (3) whether the HTI trustee, or HTI qua debtor in possession, with the approval of the bankruptcy court in New Jersey, disclaimed any legal, equitable or possessory interest in the private escrow, or (4) whether the New Jersey bankruptcy court was ever informed of the pending ICC action or the contempt proceedings against HTI. It is noteworthy, however, that there was no formal appearance before the district court, or on appeal, in behalf of HTI, qua debtor in possession
 
 
 [8]
 Bankruptcy Code Sec. 362(b)(4) excepts from the Sec. 362(a)(1) automatic stay, proceedings by a governmental unit to enforce its regulatory or police powers. Section 362(b)(5) excepts from the Sec. 362(a)(2) automatic stay, actions to enforce prepetition judgments, except money judgments, obtained by a governmental unit
 On remand, the district court should consider: (1) whether the district court action brought by ICC against HTI was an action to enforce ICC's "police or regulatory power," within the meaning of Sec. 362(b)(4), hence excepted from the Sec. 362(a)(1) automatic stay; (2) whether the district court orders appealed from--the contempt orders against appellants-intervenors and/or HTI, and the related orders, e.g., ousting the private escrow agents and appointing a successor--resulted from an act to enforce a prepetition judgment against HTI, within the meaning of Sec. 362(a)(2), or from an "act to obtain possession of property ... from the estate or to exercise control over property of the estate," within the meaning of Sec. 362(a)(3), or from an "act to collect ... or recover" prepetition claims against HTI, within the meaning of Sec. 362(a)(6). See, e.g., Ohio v. Kovacs, 469 U.S. 274, 105 S.Ct. 705, 711, 105 S.Ct. 705, 83 L.Ed.2d 649 (1985); Cournoyer v. Town of Lincoln, 790 F.2d 971, 975-97 (1st Cir.1986). See generally 2 Collier on Bankruptcy, p 362.04, , , ; p 362.05, (15th ed. 1991).
 
 
 [9]
 In the interest of justice and the avoidance of duplication of judicial effort, we suggest that the case be referred to the same judge following remand